UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEVEN C. RANDAZZO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:12-CV-999 CAS |
| | ) |
| ANCHEN PHARMACEUTICALS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants Anchen Pharmaceuticals, Inc. and Par Pharmaceutical, Inc.'s (collectively "Anchen" or "defendants") Motion to Dismiss and/or Stay and to Compel Arbitration. Plaintiff Steven C. Randazzo opposes the motion and it is fully briefed. For the following reasons, the motion to compel arbitration and to dismiss will be granted, and the motion to stay will be denied as moot.

**Background**

Plaintiff filed this action on May 14, 2012, in the Circuit Court of St. Louis County, Missouri. The Petition asserts claims for breach of contract and tortious interference with a contract and business relationship. On June 5, 2012, the defendants removed the case to this Court pursuant to 28 U.S.C. § 1441, on the basis of diversity of citizenship jurisdiction, 28 U.S.C. § 1332.

In the Petition, plaintiff alleges that in May 2009, he entered into a written employment and compensation agreement with defendant Anchen, for employment as Anchen's Vice President of Sales. Under the terms of the contract, (i) if Anchen terminated plaintiff's employment without cause upon a change in control of the company, it would pay plaintiff twelve months of severance pay based on his then-current monthly salary and twelve months of medical and dental benefits; (ii)

if Anchen terminated plaintiff's employment without cause, it would pay plaintiff six months of severance pay based on his then-current monthly salary and six months of medical and dental benefits; and (iii) if plaintiff terminated his employment because of a material diminution of his title below that of Vice President of Sales, Anchen would pay plaintiff six months of severance pay based on his then-current monthly salary and six months of medical and dental benefits. According to the motion to dismiss, Par acquired 100% of the stock of Anchen on November 15, 2011, and plaintiff began working jointly for Par and Anchen.

Plaintiff alleges that (i) Anchen terminated his employment without cause upon a change in control of the company on March 30, 2012; or (ii) Anchen terminated his employment without cause on March 30, 2012; or (iii) plaintiff terminated his employment with defendant effective April 12, 2012, because of a material diminution in his title below that of Vice President of Sales. In Count I, plaintiff alleges that Anchen breached the employment contract by failing and refusing to pay him the severance pay and medical and dental benefits due upon termination of his employment. In Count II, plaintiff alleges that defendant Par intentionally interfered with plaintiff's contract and business relationship with Anchen by causing Anchen to terminate plaintiff's employment without cause and to refuse to pay plaintiff the amounts due under the employment contract.

Anchen submitted a written offer of employment to plaintiff on April 28, 2009 (the "Offer Letter") which plaintiff signed and accepted on May 1, 2009. The Offer Letter set out, among other things, the terms of plaintiff's compensation and his eligibility for severance pay and benefits. The Offer Letter also stated in pertinent part, "On your first day of employment, you will be required to execute a standard Proprietary Information and Invention Assignment Agreement and a document that confirms that while employed with Anchen you will not make any inappropriate use of

2

proprietary information belonging to others." (Ex. 1 to Petition) The Offer Letter did not contain any reference to arbitration.

On plaintiff's second day of employment, May 19, 2009, Anchen's Human Resources Director presented him with a document titled "EMPLOYEE PROPRIETARY INFORMATION AGREEMENT (Non-Disclosure, Invention Assignment, Non-Solicitation and Non-Competition)" (the "Confidentiality Agreement"), which she described as a customary confidentiality or non-disclosure agreement designed to protect Anchen's proprietary pharmaceutical information and research. Plaintiff was not given an opportunity to review the Confidentiality Agreement in detail or to seek independent legal advice, and was informed that execution of the Confidentiality Agreement was mandatory. Plaintiff signed the Confidentiality Agreement, which contains the following arbitration clause:

> 10.2 <u>Arbitration</u>. <u>I understand and agree that, as a condition of my employment with the Company, any and all disputes that [I] may have with the Company, or any of its employees, officers, directors, agents or assigns, which arise out of my employment or investment or compensation shall be resolved through final and binding arbitration, as specified in this Agreement. This shall include, without limitation, any controversy, claim or dispute of any kind, including disputes relating to any employment by the Company or the termination thereof, claims for breach of contract</u> or breach of the covenant of good faith and fair dealing, infliction of emotional distress, defamation and any claims of discrimination, harassment or other claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Employee Retirement Income Security Act, or any other federal, state or local law or regulation now in existence or hereinafter enacted and as amended from time to time concerning in any way the subject of my employment with the Company or its termination. The only claims NOT covered by this Agreement are claims for benefits under the unemployment insurance or workers' compensation laws. <u>Any disputes and/or claims covered by this Agreement shall be submitted to final and binding arbitration to be conducted in Los Angeles, California, in accordance with the rules and regulations of the American Arbitration Association</u>. The Company and I will split the cost of the arbitration filing and hearing fees and the cost of the arbitrator. Each side will bear its own attorneys' fees, and the arbitrator will not have the authority to award attorneys' fees UNLESS a statutory section at issue in the dispute authorizes the award of attorneys' fees to the prevailing party, in which case the

3

arbitrator has authority to make such award as permitted by the statute in question. <u>The arbitration shall be instead of any civil litigation; this means that I am WAIVING ANY RIGHT TO A JURY TRIAL</u>, and that the arbitrator's decision shall be final and binding to the fullest extent permitted by law and enforceable by any court having jurisdiction thereof.

Ex. 5 to Pl.'s Mem. Opp. Mot. Dismiss (emphasis added).

**Defendants' Motions and the Parties' Positions**

The defendants move to compel arbitration and to stay or dismiss this matter pending completion of arbitration. Defendants argue that the Confidentiality Agreement between the parties contains a binding, enforceable arbitration clause that covers plaintiff's claims because it includes but is not limited to "disputes relating to any employment by the Company or the termination thereof, [and] claims for breach of contract . . . ." The defendants assert that any dispute regarding the enforceability of the arbitration clause should be decide by an arbitrator, because the clause incorporates the rules of the American Arbitration Association ("AAA"), which provide in part that the "arbitrator shall have the power to rule on his or her own jurisdiction including any objections with respect to the existence, scope or validity of the arbitration agreement." Rule 6.a of the AAA Rules of Employment Arbitration Rules and Mediation Procedures. Defendants state the Eighth Circuit has held that by incorporating the AAA's Rules in an arbitration agreement, parties agree to allow the arbitrator to determine threshold questions of arbitrability, <u>Green v. SuperShuttle International, Inc.</u>, 653 F.3d 766, 769 (8th Cir. 2011), and that this Court has held incorporation of the AAA's Rules requires arbitration of a claim that an arbitration agreement was unconscionable. <u>See</u>, <u>e.g.</u>, <u>Fox v. Career Educ. Corp.</u>, 2012 WL 1205155, at *3 (E.D. Mo. Apr. 11, 2012).

Plaintiff responds that the Court must determine the enforceability of the arbitration clause because it was procured by fraud, citing <u>H.W. Moseley v. Electronic & Missile Facilities, Inc.</u>, 374 U.S. 167, 171 (1963). Plaintiff states that the Offer Letter's reference to the Confidentiality

4

Agreement related solely to the protection of Anchen's proprietary and confidential information. Plaintiff avers that when Anchen presented the Confidentiality Agreement to him for signature, its Human Resources Director represented that the document was a customary confidentiality and non-disclosure agreement designed to protect the company's proprietary pharmaceutical information and research, and informed him that execution of the Confidentiality Agreement was mandatory. Plaintiff also argues that the title of the Confidentiality Agreement gives no indication that it relates to compensation or the written Offer Letter, the arbitration clause is "hidden in the fine print" of the six-page, single-spaced document, Pl.'s Mem. Opp. at 8, and there were no discussions or explanations with respect to the arbitration provision of the Agreement. Randazzo Aff. at 3, ¶ 8.

In sum, plaintiff avers that he had "no idea" the Confidentiality Agreement would require him to arbitration "unrelated claims over his compensation," that the "very nature and scope of the arbitration clause was flat out misrepresented to him," and that the "agreement to arbitrate Plaintiff's compensation claims was procured by Defendants' fraudulent representation that the Confidentiality Agreement was, in fact, a confidentiality agreement limited to protecting the company's proprietary information and research." Pl.'s Mem. Opp. at 8. Thus, plaintiff contends there is no "clear and unmistakable evidence" he agreed to arbitrate gateway questions of the arbitrability of his compensation claims and, accordingly, the gateway question whether the parties made a valid agreement to arbitrate those claims must be decided by the Court. Plaintiff argues that <u>Green</u> and other cases cited by defendants are distinguishable because none of the parties in those cases claimed the arbitration clause was procured by fraud or misrepresentation.

Plaintiff also argues that the Confidentiality Agreement is unenforceable because (1) Anchen never signed the Confidentiality Agreement so no contract was formed; (2) the Confidentiality Agreement is not supported by consideration, because plaintiff was already employed when he

5

signed it and he received no payment or other consideration in exchange for signing it; and (3) the arbitration clause lacks mutuality because it only obligates plaintiff to arbitrate his disputes with Anchen and contains no reciprocal agreement that Anchen arbitrate claims it may have against the plaintiff. Finally, plaintiff argues that defendants waived the right to compel arbitration by removing the case from state court on June 5, 2012, but not filing their motion to compel arbitration until July 3, 2012, and by seeking a jury trial on plaintiff's claims, which is inconsistent with arbitration.

The defendants reply that plaintiff's claims of fraud and misrepresentation are not for this Court to decide, because the parties incorporated the AAA rules into the arbitration clause of the Confidentiality Agreement, and therefore it is a matter for the arbitrator to decide. Defendants further reply that plaintiff's claims of fraud and misrepresentation are made towards the Confidentiality Agreement as a whole, not the arbitration provision itself, and therefore the claims must be decided by the arbitrator, and not the Court, under Rent-A-Center, West, Inc. v. Jackson, 130 S. Ct. 2772, 2778 (2010), and Prima Paint Corp. v. Flood & Conklin Mfg., 388 U.S. 395, 403-04 (1967).

Defendants dispute plaintiff's argument that the Confidentiality Agreement was not accepted by Anchen, and note that Anchen drafted the Agreement and presented to it plaintiff for signature, and also sent plaintiff the Offer Letter which stated that the Confidentiality Agreement would need to be signed as a condition of employment. Defendants assert that plaintiff's signature on the Confidentiality Agreement was his acceptance of it, and defendants were not required to accept plaintiff's acceptance. Defendants cite Berkley v. Dillard's, Inc., 450 F.3d 775, 776-77 (8th Cir. 2006), as affirming this Court's decision to compel arbitration based on an arbitration program that was not signed by either party.

Defendants also assert that because the Offer Letter specifically stated the offer of employment was dependent on plaintiff's execution of the Confidentiality Agreement, the consideration for plaintiff's agreement to the Confidentiality Agreement was his employment; and because execution of the Confidentiality Agreement was part of the Offer Letter, it does not matter that plaintiff signed the Agreement the second day of his employment. Defendants assert that plaintiff's argument regarding mutuality goes to whether or not the arbitration clause is unconscionable, which is an issue to be determined by the arbitrator. Finally, defendants respond that they did not waive their right to compel arbitration because they filed their Motion to Compel Arbitration just over a month after removal and, before doing so, first provided plaintiffs' counsel with a copy of the arbitration agreement asking if he would agree to arbitrate.

**Discussion**

Under the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), agreements to arbitrate "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This statute manifests the strong federal policy favoring arbitration and requires courts to enforce arbitration agreements according to their terms. AT & T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011). The Supreme Court has instructed that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).

"[W]hen deciding whether to compel arbitration, a court asks whether a valid agreement to arbitrate exists, and if so, whether the dispute falls within the scope of that agreement." Newspaper Guild of St. Louis, Local 36047 v. St. Louis Post Dispatch, LLC, 641 F.3d 263, 266 (8th Cir. 2011); see also Berthel Fisher & Co. Fin. Servs., Inc. v. Larmon, No. 11-2877, 2012 WL 4477433, at *2, __ F.3d __ (8th Cir. Oct. 1, 2012). Here, plaintiff does not dispute that his claims fall within the

parameters of the arbitration clause in the Confidentiality Agreement. Instead, plaintiff argues that the arbitration clause is unenforceable because it was procured by fraud.

I.

"Parties are free to agree to arbitrate threshold or 'gateway' questions of arbitrability." Fox, 2012 WL 1205155, at *3 (citing Rent-A-Center, 130 S. Ct. at 2777 (noting this "reflects the fundamental principle that arbitration is a matter of contract.")). The Eighth Circuit has held that "[b]y incorporating the AAA Rules, the parties agree[] to allow the arbitrator to determine threshold questions of arbitrability." Green, 653 F.3d at 769. "Inclusion of the AAA Rules into an arbitration agreement is a 'clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator.'" Fox, 2012 WL 1205155, at *3 (quoting Fallo v. High-Tech Inst., 559 F.3d 874, 878 (8th Cir. 2009)).

In this case, the arbitration clause provides that the parties agreed to abide by the AAA rules and regulations. Under Eighth Circuit precedent, the parties therefore clearly and unmistakably agreed the arbitrator can determine questions of arbitrability. Plaintiff argues, however, that the issues of fraud and misrepresentation he raises are not gateway questions of arbitrability, but rather are for the Court to decide.

The Court disagrees. This Court has held that issues of fraud and misrepresentation are included among the "gateway" questions of arbitrability that are for an arbitrator to resolve, where the parties have agreed to allow the arbitrator to determine threshold questions of arbitrability. In Fox, this Court compelled arbitration despite the plaintiff's argument that the arbitration clause was procedurally unconscionable because the defendants' representatives made misrepresentations to her, pressured her into signing the agreement containing the arbitration clause without discussion or negotiation, and hid the arbitration clause in small print on the last page of the agreement. The

8

plaintiff had also argued that the agreement was a contract of adhesion because it was offered on a take-it-or-leave-it basis and because the parties had unequal bargaining power. Fox, 2012 WL 1205155, at **2-3. The Court concluded it was for the arbitrator to determine the enforceability of the arbitration clause, because "[n]one of the plaintiff's arguments challenge the provision of the arbitration clause delegating authority to an arbitrator to resolve issues of arbitrability." Id., at *3.

For the same reason, the Court concludes that plaintiff's claims of fraud and misrepresentation are gateway questions of arbitrability for the arbitrator to determine.

II.

Plaintiff also contends that his claims of fraud and misrepresentation are for the Court to determine because the arbitration clause itself was induced by fraud. The Supreme Court has held a claim that the entire contract was induced by fraud is an issue for an arbitrator, but a claim that the arbitration clause itself was fraudulently induced is to be decided by a court. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967), see also Rent-A-Center, 130 S. Ct. at 2778 (under the holding of Prima Paint, the alleged fraudulent inducement must "be directed specifically to the agreement to arbitrate before the court will intervene"); Buckeye Check Cashing, Inc. v. Keating, 546 U.S. 440, 445-46 (2006). Accordingly, a district court may "consider a claim that a party was fraudulently induced to include an arbitration clause in a contract, but not a claim that an entire contract was the product of fraud." Houlihan v. Offerman & Co., 31 F.3d 692, 695 (8th Cir.1994).

Although plaintiff argues that the arbitration clause is unenforceable because it was induced by fraud, the substance of his argument is that the entire Confidentiality Agreement was fraudulently induced. The misrepresentations plaintiff alleges are not that the arbitration clause itself did not mean what it said, or that Anchen said it would not enforce it, or anything specifically related to the

9

meaning or validity of the arbitration clause. Instead, plaintiff alleges that Anchen did not tell him the Confidentiality Agreement contained an arbitration clause and affirmatively represented to him that the Agreement was a standard type of non-disclosure agreement designed to protect Anchen's proprietary pharmaceutical information and research; that he did not have an adequate opportunity to read the Agreement; that he was not given the opportunity to have his attorney review the Agreement before he signed it; and that he was told signing the Agreement was mandatory. These kinds of alleged misrepresentations go to the entire contract, not to the arbitration clause itself.

In addressing a motion to compel arbitration in a case with allegations of fraud similar to those made by plaintiff here, Chief Judge Perry of this Court observed, "If the arbitration clause was induced by fraud, so was the entire contract; if it was not, neither was the entire contract." Rothman Furniture Stores, Inc. v. Everest Software, Inc., 2010 WL 4319707, at *2 (E.D. Mo. Oct. 22, 2010). The same is true here. As the Supreme Court stated in Rent-A-Center, "[W]here the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract . . . we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene." Rent-A-Center, 130 S. Ct. at 2778. Consequently, the Court concludes that under Prima Paint and Rent-A-Center, plaintiff's allegations of fraud are a matter for the arbitrator to decide, not the Court.

### III.

The Court now turns to plaintiff's state-law based arguments concerning the Confidentiality Agreement. As a threshold matter, the Confidentiality Agreement provides that the Agreement and the rights of the parties thereunder are to be governed by and construed under California law. Federal courts sitting in diversity apply the choice-of-law rules of the forum state. Prudential Ins. Co. of Am. v. Kamrath, 475 F.3d 920, 924 (8th Cir. 2007). Under Missouri law, a choice-of-law

clause in a contract generally is enforceable unless application of the agreed-to law is "contrary to a fundamental policy of Missouri." Kagan v. Master Home Prods., Ltd., 193 S.W.3d 401, 407 (Mo. Ct. App. 2006). Plaintiff does not acknowledge the choice of law provision in the Confidentiality Agreement, much less argue that application of California law is contrary to a fundamental policy of Missouri. Plaintiff's reliance on Missouri law in support of his arguments is therefore misplaced.

Plaintiff argues that no contract exists because the Confidentiality Agreement was never signed and accepted by Anchen, and that there was no consideration to support the Confidentiality Agreement. These arguments are challenges to the Confidentiality Agreement as a whole, and not just the arbitration agreement. As a result, these issues are for the arbitrator to decide. See Rent-A-Center, 130 S. Ct. at 2778; Prima Paint, 388 U.S. at 403-04; Rothman Furniture Stores, 2010 WL 4319707, at *2. Plaintiff's argument regarding mutuality of obligation goes to the issue of whether or not the arbitration clause is unconscionable, which is also a matter to be determined by the arbitrator. See Rent-A-Center, 130 S. Ct. at 2778 ("This one-sided-coverage argument clearly did not go to the validity of the delegation provision."); Fox, 2012 WL 205155, at **2-3 (holding that whether or not an arbitration provision is substantively unconscionable is a matter for decision by the arbitrator as a result of incorporation of the AAA Rules). In sum, none of these arguments provide a basis for denial of the motion to compel arbitration.

IV.

Finally, plaintiff contends that the defendants waived their right to compel arbitration by acting inconsistently with arbitration, by substantially invoking litigation machinery before asserting their arbitration rights. Plaintiff contends that to preserve their arbitration rights, defendants had to file a motion to compel at the same time they removed this case from state court, citing Cabinetree of Wisconsin v. Kraftmaid Cabinetry, Inc., 50 F.3d 388 (7th Cir. 1995).

11

In Cabinetree, the 7th Circuit affirmed a finding of waiver where the party requesting arbitration waited eight months after removing the action before it filed a motion to compel arbitration. In the intervening time period, significant discovery took place and the district court issued a scheduling order and set a trial date. Even if Cabinetree were binding precedent on this Court, which it is not, it is readily distinguishable from the instant case. Here, the defendants removed the case on June 5, 2012, and filed a motion to compel arbitration on July 3, 2012, less than a month after removal and after having given plaintiff the opportunity to agree to arbitrate. No Rule 16 scheduling conference has been set or held, and no discovery has taken place.

Defendants have not taken any action that is inconsistent with their right to arbitration and have not waived that right. The mere act of removing a case to federal court does not constitute a waiver of the right to arbitrate. See, e.g., Cicle v. Chase Bank USA, 583 F.3d 549, 551, 557 (8th Cir. 2009) (remanding case with instructions to grant the defendant's motion to compel arbitration, although defendant had removed the case to federal court); Rigsby v. XL Health Corp., 2011 WL 2563179, *2 (W.D. Mo. June 28, 2011) ("Removal is a procedural action that is not inconsistent with a party's right to arbitrate the merits."). Plaintiff's waiver argument is without merit.

V.

As discussed above, the claims plaintiff raises in this case fall within the scope of a valid arbitration agreement between the parties. The FAA provides that when a court finds the claims raised in an action are properly referable to arbitration, it should stay the action until arbitration proceedings are concluded. See 9 U.S.C. § 3. This Court has observed, however, that "where all of the issues raised in the Complaint must be submitted to arbitration in accordance with a valid and enforceable arbitration agreement, most courts agree that dismissal of the cause, rather than

imposing a stay, is appropriate." Rothman Furniture Stores, 2010 WL 4319707, at *2. (E.D. Mo. Oct. 22, 2010).

The Eighth Circuit has recognized the "judicially-created exception to the general rule which indicates district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." Green, 653 F.3d at 769-70 (citing Jann v. Interplastic Corp., 631 F.Supp.2d 1161, 1167 (D. Minn. 2009) (citing cases)). In Green, the Eighth Circuit concluded that the district court abused its discretion in dismissing rather than staying the action, because "it [was] not clear all of the contested issues between the parties [would] be resolved by arbitration." Id. at 770. In contrast, in the instant action, plaintiff does not argue that he is exempt from the FAA, and the Court has concluded that plaintiff's claims fall within the scope of a valid arbitration provision. The arbitration provision in the instant action provides that "any and all disputes that [plaintiff] may have with [Anchen or its assigns] . . . which arise out of [his] employment or investment or compensation shall be resolved through final and binding arbitration[.]" As a result, the Court finds that no purpose would be served by staying the case, and dismissal is appropriate so that the parties may proceed with arbitration.

**Conclusion**

For the foregoing reasons, defendants' Motion to Compel Arbitration and Motion to Dismiss should be granted, and their alternative Motion to Stay should be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Motion to Dismiss and/or Stay and to Compel Arbitration is **GRANTED in part** and **DENIED in part** as moot; the Motion to Compel Arbitration and Motion to Dismiss are **GRANTED**, and the alternative Motion to Stay is **DENIED as moot**. [Doc. 9]

An appropriate order of dismissal will accompany this Memorandum and Order.


_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this __18th__ day of October, 2012.